## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

KAREN C. LEDKINS,                    *
                                     *
    Plaintiff,               *
                                     *
vs.                                  *        CIVIL ACTION NO. 18-00011-B
                                     *
NANCY BERRYHILL,                     *
Acting Commissioner of Social        *
Security,                            *
                                     *
    Defendant.               *

## <u>ORDER</u>

Plaintiff Karen C. Ledkins (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On October 19, 2018, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 19). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

## I. __Procedural History__[1]

Plaintiff filed her applications for benefits on January 5, 2015, and February 24, 2015, alleging disability beginning May 24, 2012, based on severe major depression, fibromyalgia, spinal stenosis, migraines, knee replacement, and bone spurs in shoulders. (Doc. 12 at 174, 176, 192, 196). Plaintiff's application was denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge L. Dawn Pischek (hereinafter "ALJ") on September 21, 2016. (Id. at 41). Plaintiff attended the hearing with her attorney and provided testimony related to her claims. (Id. at 44). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 64). On April 14, 2017, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 14). The Appeals Council denied Plaintiff's request for review on December 5, 2017. (Id. at 5). Therefore, the ALJ's decision dated April 14, 2017, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). Oral argument was conducted on November 8, 2018. (Doc. 22). This case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

## II. Issues on Appeal

1. Whether substantial evidence supports the Residual Functional Capacity ("RFC") for a range of light work with the stated restrictions?

2. Whether the ALJ erred in relying on the vocational expert's testimony that there were jobs that Plaintiff could perform?

## III. Factual Background

Plaintiff was born on March 16, 1965, and was fifty-one years of age at the time of her administrative hearing on September 21, 2016. (Doc. 12 at 41, 192). Plaintiff graduated from high school and completed three years of college, obtaining a certificate to be a respiratory technician. (Id. at 45).

Plaintiff last worked from 2007 to 2012 as a bus driver for the Mobile County School System. (Id. at 197). Prior to that, she worked from 2001 to 2008 as a bus driver for the Harrison County School System, from 1998 to 2001 as a casino dealer, and from 2005 to 2006 as a cashier at Dollar General. (Id.).

Plaintiff testified that she can no longer work because she cannot stand for long periods of time because of knee pain, and she has problems with lifting and reaching because of neck and shoulder pain, as well as fibromyalgia. (Id. at 45-49). Plaintiff testified that she has had surgery on her knee, neck, and shoulders. (Id. at 48-49, 55). Plaintiff testified that she takes medication for depression and fibromyalgia, which has helped. (Id. at 50-51, 59).

## IV. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[2] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

---

[2] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

**V.    Statutory and Regulatory Framework**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). At the fourth step, the ALJ must make an assessment of the claimant's RFC. See Phillips v. Barnhart, 357 F.

3d 1232, 1238 (llth Cir. 2004).  The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairment.  See Lewis v. Callahan, 125 F.3d 1436, 1440 (llth Cir. 1997).

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

## VI. Discussion

### A. Substantial evidence supports the Residual Functional Capacity ("RFC") for a range of light work with the stated restrictions.

In her brief, Plaintiff argues that the ALJ's finding that she can perform a range of light work is not supported by substantial evidence, given her right shoulder pain, right hip pain, neck pain,

and left knee pain.[3]  (Doc. 13 at 5-7).  Specifically, Plaintiff argues that these impairments prevent her from performing the RFC requirements of occasional overhead reaching, climbing, stooping, kneeling, crouching, and crawling. (Id.).  The Government counters that the ALJ expressly considered all of Plaintiff's impairments and that the RFC is fully supported by the substantial evidence. (Doc. 15 at 3-5).  Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations.  See 20 C.F.R. § 404.1545.  Determinations of a claimant's RFC are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments and must be supported by substantial evidence.  See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012).  Once the ALJ has determined the claimant's RFC, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence.  See Flynn v. Heckler, 768 F.2d 1273, 1274

_____

[3] While Plaintiff mentions other diagnoses, such as fibromyalgia and migraines, her arguments primarily center around her neck, shoulder, and knee pain, and, to a limited extent, her hip pain. (Doc. 13 at 6).

(11th Cir. 1985).  Plaintiff has failed to meet his burden in this case.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians.  In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so.  See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).  The failure to do so is reversible error.  See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so.  Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)).  However, the opinion of "a one-time examining physician — or psychologist" is not entitled to the same deference as a treating physician.  Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160).  An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security

disability evaluation.'" <u>Milner v. Barnhart</u>, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." <u>Id.</u> (citing <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." <u>Hogan v. Astrue</u>, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." <u>Sryock v. Heckler</u>, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); <u>Adamo v. Commissioner of Soc. Sec.</u>, 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

In the instant case, the ALJ found that Plaintiff has the severe impairments of degenerative disc disease, status post total knee arthroplasty, history of cervical fusion, history of bilateral rotator cuff repair, fibromyalgia by history, chronic obstructive

pulmonary disease (COPD), obesity, affective disorder, personality disorder, pain disorder, and amphetamine abuse. (Doc. 12 at 17). The ALJ determined that Plaintiff has the RFC to perform a range of light work with the following restrictions: Plaintiff can occasionally climb, stoop, kneel, crouch, and crawl. She can occasionally reach overhead. She should avoid all exposure to unprotected heights and hazardous machinery. She is limited to occasional exposure to dusts, fumes, odors, and gases. She is capable of performing simple, routine, tasks in two-hour increments with normal breaks for the duration of an eight-hour workday, which includes a 15-minute break in the morning and afternoon, and a 30-minute lunch. She is limited to occasional change in the routine work setting and occasional interaction with the public. (Id. at 20).

Based upon the testimony of the vocational expert, the ALJ concluded that Plaintiff is not able to perform her past relevant work, but she can perform other work such as assembler, packaging worker, and collator operator, all light and unskilled. (Id. at 65). Thus, the ALJ found that Plaintiff is not disabled. Having reviewed the evidence at length, the Court is satisfied that the ALJ's RFC is supported by substantial evidence.

As the ALJ found, Plaintiff's treatment records show that she was treated from 2012 to 2016 for various ailments including neck pain, knee pain, shoulder pain, chest pain, asthma, headaches,

depression, and fibromyalgia. (Id. at 253, 290-91, 306, 313, 319-75, 389-437). Following successful left knee replacement surgery in 2006, bilateral rotator cuff repair in 2007, and cervical disc fusion surgery in 2009,[4] Plaintiff's treatment records reflect largely conservative treatment for her medical conditions with medication, diet, and exercise. (Id.).

Indeed, although Plaintiff's medical records do document some instances of decreased range of motion in her neck and right shoulder (id. at 278, 317),[5] for the most part, her physical examination findings are largely normal and reflect notations of 5/5 motor strength in upper extremities; 5/5 motor strength in right lower extremity; 4/5 motor strength in left lower extremity due to knee replacement; normal bulk and tone in upper and lower extremities; no extremity tenderness; no extremity swelling; normal gross and fine motor skills; normal sensory exam; "no acute distress;" "walked to the exam room without difficulty;" "appeared

---

[4] X-rays of Plaintiff's cervical and lumbar spine taken on May 29, 2012, showed "status post anterior cervical disc fusion of C5 to C7 levels. There are no evident postoperative complications. The remainder of the disc levels are normal. . . . Minimal early degenerative disc disease at L1-2. Otherwise unremarkable AP and lateral lumbar spine." (Doc. 12 at 253).

[5] On the other hand, Plaintiff's treatment records on December 31, 2014, reflect full range of motion in all extremities, and on July 22, 2016, reflect good lumbar flexion with only mild pain on extension, full bilateral hip motion, good strength in shoulders, and full range of motion in shoulders with mild pain at extremes of motion. (Doc. 12 at 298, 401).

to sit comfortably;" "could get on and off the examination table without difficulty;" "can take her shoes off and put them back on;" and normal gait, stride, and speed, with no assistive device. (Id. at 253, 278, 291, 297-98, 314-17, 389-91, 401, 432-37).

In addition, Plaintiff's treatment records reflect that she was examined on July 22, 2016, by an orthopedist, Dr. Robert McGinley, M.D., who noted: "good lumbar flexion, mild pain with extension. Full bilateral hip motion. Negative straight leg raising. The left total knee has flexions from zero to 125 degrees with mid arc instability. She is neurologically intact. She has full [range of motion] but shows mild pain with extremes of bilateral shoulder elevation and good strength. No neurologic deficits. . . . Weight reduction, back exercises would help." (Id. at 401). Dr. McGinley opined that, "from an orthopedic standpoint, [Plaintiff] would not qualify [for disability]." (Id. at 402). The ALJ assigned significant weight to this opinion, finding it consistent with Dr. McGinley's examination findings and his area of expertise. (Id. at 24). In her brief, Plaintiff argues that the ALJ erred in relying on Dr. McGinley's opinion that she would not qualify for disability, as he was not a consultative examiner, and he did not review any of her past records. However, even assuming error as Plaintiff claims, any such error would be harmless given the remaining substantial evidence supporting the RFC in this case, as detailed herein. See Battle v. Astrue, 243 Fed. Appx. 514, 522

(11th Cir. 2007) (unpublished) (errors are harmless if they do not prejudice the claimant); see also Ware v. Schweiker, 651 F. 2d 408, 412 (5th Cir. 1981) (remand would be a "wasteful corrective exercise" when "no further findings could be made that would alter the ALJ's determination" given the record as a whole). Thus, Plaintiff's argument in this regard is unavailing.

Indeed, in addition to the foregoing, the record further shows that, on December 2, 2013, consultative examiner, Dr. Alan Sherman, M.D., documented Plaintiff's complaints of pain in her hip, neck, shoulders, and lumbar spine during range of motion exercises, as well as decreased range of motion in her neck and lumbar spine. Nevertheless, Dr. Sherman noted that Plaintiff had normal range of motion in her knees, ankles, hips, shoulders, wrists, and elbows; upper and lower extremity strength were 5/5 bilaterally; she had no lower extremity swelling; normal gait, stride, and speed with no assistive device; and she was able to lift herself up with both arms onto the examination table. (Id. at 278). Dr. Sherman opined that it would be difficult for Plaintiff to engage in *heavy* lifting, pushing, pulling, carrying, stooping, crawling, and kneeling activities and that any work opportunities would need to include "sitting, standing, short distance ambulation, light physical activities, clerical, and communication." (Id. at 279) (emphasis added). The ALJ assigned Dr. Sherman's opinions significant weight, finding them to be consistent with the substantial medical evidence

in the case.  (Id. at 24-25).

Also, on March 14, 2015, consultative examiner, Dr. Elmo Ozment, Jr., M.D., noted Plaintiff's reports of pain in her left knee with range of motion exercises, as well as decreased range of motion of the neck, right shoulder, and lumbar spine.  In addition, Dr. Ozment noted that Plaintiff could only partially squat because of knee pain and that she had difficulty putting her heels on her shin.  (Id. at 315).  However, Dr. Ozment also found that Plaintiff walked without difficulty; appeared to sit comfortably; could get on and off the examination table without difficulty; could take her shoes off and put them back on; had normal range of motion in her left knee and left shoulder; had normal gait and coordination; used no assistive device; her muscle bulk and tone was normal in the upper and lower extremities; her motor strength was 5/5 in the upper and right lower extremities and 4/5 in the left lower extremity because of her knee replacement; her gross and fine motor skills were normal; and her sensory exam was normal.  (Id. at 315-17). Dr. Ozment opined that Plaintiff could walk up to six hours and stand up to four hours without the need for an assistive device, could occasionally climb stairs, stoop, crouch, kneel, and crawl, could occasionally lift/carry ten to twenty pounds and frequently lift/carry five to ten pounds (except for her right shoulder with which she could only lift/carry five to ten pounds occasionally and less than five pounds frequently), and could never reach overhead

with her right extremity and only reach forward occasionally, although she had no limitations in reaching with her left extremity. (Id. at 317-18). The ALJ assigned partial weight to Dr. Ozment's opinions, disagreeing with his opinions that Plaintiff could never reach overhead with her right extremity and could only occasionally reach forward with her right extremity. The ALJ explained that, while Plaintiff had decreased range of motion in her right shoulder, Dr. Ozment found that she maintained full bulk, tone, and strength on that side. In addition, consultative examiner, Dr. Sherman, noted in November 2013, that Plaintiff had normal range of motion and full strength in her bilateral upper extremities with the ability to lift and reposition herself on the examination table using her arms. (Id. at 22-24, 278). Also, Dr. McGinley noted in February 2016 that Plaintiff had full range of motion of both shoulders with pain at the extremes, but otherwise good strength with no neurological deficits. (Id. at 23-24, 401). The record shows that the ALJ limited Plaintiff's RFC to occasional overhead reaching to account for pain in the extremes of motion. (Id. at 20). Having reviewed the record at length, the Court finds that the substantial evidence supports the ALJ's assignment of weight to the opinion evidence in this case and that the ALJ had good cause to discredit Dr. Ozment's opinion that Plaintiff could never reach overhead and could only occasionally reach forward with her right extremity.

While there is no question that Plaintiff's medical history includes past cervical disc fusion surgery, bilateral shoulder rotator cuff surgery, and left knee replacement surgery and that she continues to experience symptoms such as neck pain, shoulder pain, and knee pain, Plaintiff's treatment records, on the whole, reflect routine, conservative treatment of her symptoms with medication, diet, and exercise, resulting in largely normal examination findings. Based on the foregoing, the Court finds that the substantial evidence supports the ALJ's determination that Plaintiff has the RFC to perform a range of light work, with the stated restrictions. Indeed, Plaintiff has failed to show that she has any functional limitations which exceed the RFC or are not adequately accommodated by the RFC and its stated restrictions. Accordingly, Plaintiff's claim must fail.[6]

---

[6] Although Plaintiff has cited evidence in the record which she claims supports a finding that she is disabled, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review. The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence. See Figueroa v. Commissioner of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, *15-16, 2017 WL 4992021, *6-7 (M.D. Fla. Nov. 2, 2017) ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the doctor's opinions about [her] limitations' . . ., this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether this finding is.").

## B. The ALJ did not err in relying on the vocational expert's testimony that there were jobs that Plaintiff could perform.

Next, Plaintiff argues that the ALJ erred in relying on the testimony of the vocational expert ("VE") that she could perform other work, namely, assembler, packaging worker, and collator operator, all light and unskilled. (Doc. 12 at 65). Specifically, Plaintiff argues that the jobs of assembler and collator operator require frequent reaching, and the job of packaging worker requires constant reaching; thus, Plaintiff argues, they are precluded by the RFC restriction to only occasional *overhead* reaching. (Id. at 3-4). The Commissioner counters that the Dictionary of Occupational Titles (DOT) does not specify that the jobs in question require *overhead* reaching and, thus, the vocational expert's testimony was not inconsistent with the DOT. (Doc. 15 at 6). The Court has reviewed the record at length and finds Plaintiff's claim to be without merit.

In a recent decision, Washington v. Commissioner of Soc. Sec., 906 F.3d 1353, 1356 (11th Cir. 2018), the Eleventh Circuit held that "the ALJs within the SSA have an affirmative duty to identify apparent conflicts between the testimony of a Vocational Expert and the DOT and resolve them." The court explained that:

> This duty requires more of the ALJ than simply asking the VE whether his testimony is consistent with the DOT. Once the conflict has been identified, the Ruling requires the ALJ to offer a reasonable explanation for the discrepancy, and detail in his decision how he

> has resolved the conflict. The failure to
> discharge this duty means that the ALJ's
> decision, when based on the contradicted VE
> testimony, is not supported by substantial
> evidence.

Washington, 906 F.3d at 1356.  An "apparent conflict" is "more than

just a conflict that is made apparent by the express testimony of

the VE."  Id. at 1365.

> It is a conflict that is reasonably
> ascertainable or evident from a review of the
> DOT and the VE's testimony. At a minimum, a
> conflict is apparent if a reasonable
> comparison of the DOT with the VE's testimony
> suggests that there is a discrepancy, even if,
> after further investigation, that turns out
> not to be the case.

Id.  Indeed, whether during or after a hearing,[7] "the ALJ is expected

to take notice of apparent conflicts, even when they are not

identified by a party, and resolve them."  Id. at 1363; accord

Bennett v. Commissioner of Soc. Sec., 2019 U.S. Dist. LEXIS 16080,

*20, 2019 WL 410271, *8 (M.D. Fla. Feb. 1, 2019) (citing Washington,

906 F.3d at 1365).

In the instant case, a VE was called to testify at Plaintiff's

hearing as to jobs that Plaintiff could perform with her specified

---

[7] The court explained that the ALJ may resolve an apparent conflict
in one of two ways: "the ALJ must ask the VE whether there is a
conflict and must ask for an explanation if there appears to be a
conflict," or when an ALJ identifies an apparent conflict that was
not raised during a hearing, the ALJ "can request an explanation of
the conflict by submitting interrogatories to the vocational
expert."  Washington, 906 F.3d at 1363.

limitations.  (Doc. 12 at 65).  The ALJ posed a hypothetical to the vocational expert, expressly including the limitation of "occasional overhead reaching."  Based upon the hypothetical, the vocational expert testified that an individual with claimant's age, education, and prior work experience with the limitations posed by the ALJ, including occasional overhead reaching, could perform the jobs of assembler, packaging worker, and collator operator, all light and unskilled. (Id.).  The ALJ then confirmed with the vocational expert that her testimony was consistent with the DOT and adopted the vocational expert's findings regarding the identified jobs.  (Id. at 65-66).

At the outset, it should be noted that the DOT is silent on the issue of _overhead_ reaching with respect to the jobs identified by the VE.  Indeed, the DOT does not specify that the identified jobs require any _overhead_ reaching.  Plaintiff does not dispute this fact.  Rather, Plaintiff simply argues that the jobs require frequent and/or constant reaching in general, which, Plaintiff argues, creates an apparent conflict with the RFC's requirement of only occasional _overhead_ reaching.  Plaintiff's argument is misplaced.

According to the Selected Characteristics of Occupations ("SCO"), published by the U.S. Department of Labor (and cited by

Defendant),[8] the jobs of assembler (DOT # 706.687-010) and collator operator (DOT # 208.685-010) require frequent reaching and the job of packaging worker (DOT # 753.687-038) requires constant reaching. See United States Dept. of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993). Moreover, both the SCO and SSR 85-15 define "reaching" as "extending of the hands and arms in any direction." SSR 85-15, 1985 WL 56857, *7. Thus, Plaintiff is correct that the jobs identified by the VE require frequent and/or constant reaching. Plaintiff is incorrect, however, that the general requirement of reaching, whether performed frequently or constantly, creates an apparent conflict with the RFC's restriction to occasional *overhead* reaching.

In a recent case, Bennett v. Commissioner of Soc. Sec., 2019 U.S. Dist. LEXIS 16080, *22, 2019 WL 410271, *7-8 (M.D. Fla. Feb. 1, 2019), the court rejected a similar argument that the ALJ erred in failing to explain the "obvious inconsistency" between the RFC, which required no *overhead* reaching, and the jobs identified by the VE which included frequent and/or constant "reaching," as provided by the DOT and SCO. The court stated:

---

[8] Plaintiff relies on a program called "Job Browser Pro by Skill TRAN" as the source of her data regarding the reaching requirements of the jobs at issue in this case. (Doc. 13 at 3). In any event, the parties agree on the reaching requirements of the identified jobs.

> [T]he ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1362 (11th Cir. 2018). Thus, an ALJ must ask the vocational expert whether a conflict between his or her testimony and the DOT exists and must ask for an explanation if there appears to be a conflict. Id. at 1363. . . .
>
> In the instant case, in the hypothetical to the vocational expert, the ALJ included the limitation of no overhead reaching. (Tr. at 62). Based upon the hypothetical, the vocational expert testified that an individual with claimant's age, education, and prior work experience with the limitations posed by the ALJ – including no overhead reaching – could perform the jobs of mail clerk, inspector, and office helper. (Id. at 62-63). The ALJ confirmed with the vocational expert that her testimony was consistent with the DOT and the SCO. (Id. at 64). The ALJ adopted the vocational expert's findings regarding the identified jobs. (Id. at 20). . . .
>
> The Court finds that Plaintiff does not articulate a conflict between the DOT and the vocational expert's testimony or the SCO and the vocational expert's testimony. As stated by Plaintiff, at most the DOT and SCO provide a requirement for reaching in general, but do not include any mention of overhead reaching. (Doc. 31 at 28). Thus, the Court finds that there is no apparent conflict in this case that the ALJ is required to address in the decision.

Bennett, 2019 U.S. Dist. LEXIS 16080 at *19-22, 2019 WL 410271 at

*8-9; accord Melton v. Commissioner of Soc. Sec., 2018 U.S. Dist.

LEXIS 165800, *6-7, 2018 WL 4658199, *2 (S.D. Fla. Sept. 27, 2018)

(recognizing that the DOT does not distinguish between "overhead

reaching" and "reaching" generally and rejecting Plaintiff's argument that the ALJ erred by failing to resolve a conflict between the VE's testimony that a person with Plaintiff's RFC for only occasional overhead reaching could perform jobs requiring frequent reaching; holding that there was no "apparent unresolved conflict" between the vocational expert's testimony and the DOT, as the DOT job listings are silent about overhead reaching); Jackson v. Berryhill, 2018 U.S. Dist. LEXIS 31459, *27, 2018 WL 1079411, *7 (N.D. Ga. Jan. 25, 2018), *report and recommendation adopted*, 2018 WL 1077302 (N.D. Ga. Feb. 26, 2018) (rejecting Plaintiff's argument that the RFC's restriction to only occasional overhead reaching with the right upper extremity and never with the left upper extremity was in direct conflict with the jobs identified by the VE because those jobs required frequent reaching; holding that the ALJ properly posed a question to the VE that contained the reaching limitations, that the VE determined that there were jobs available for a person with those limitations, and that "there was no 'apparent' conflict that would give rise to error under SSR 00-04p.").

Thus, while the ALJ in this case had an affirmative duty to identify any apparent conflicts between the VE's testimony and the DOT and to resolve them, courts have uniformly held that the DOT's silence on a job requirement or limitation does not suggest the existence of a conflict between the DOT and the VE's testimony;

rather, it indicates the absence of a conflict. See, e.g., Bennett, 2019 U.S. Dist. LEXIS 16080 at *19-22, 2019 WL 410271 at *8-9; Melton, 2018 U.S. Dist. LEXIS 165800 at *6-7, 2018 WL 4658199 at *2; Jackson, 2018 U.S. Dist. LEXIS 31459, 2018 WL 1079411 at *7-8; see also White v. Colvin, 2016 U.S. Dist. LEXIS 174864, *24, 2016 WL 7341709, *8 (M.D. Ala. Dec. 19, 2016) (holding that "[t]he court cannot conclude that the VE's testimony was inconsistent with a portion of the DOT that, by [plaintiff's] own admission, does not even exist"); Gaines v. Colvin, 2015 U.S. Dist. LEXIS 21380, *9, 2015 WL 769926, *4 (M.D. Fla. Feb. 23, 2015) (where the DOT was silent on the limitation of "fine fingering," "[the expert's testimony is said to be consistent with the DOT."); Razor v. Commissioner of Soc. Sec., 2013 U.S. Dist. LEXIS 155563, *14, 2013 WL 5854575, *6 (M.D. Fla. Oct. 30, 2013) (finding that the DOT's silence on a sit/stand option for the jobs identified by the VE did not create a conflict); Feaster v. Astrue, 2011 WL 2036628, 2011 WL 2036628, *8 (M.D. Ala. May 24, 2011) (recognizing that "numerous courts" have held that, "because the DOT does not address the sit/stand option, 'it is not apparent' that a vocational expert's testimony about that subject presents any conflict with the DOT.").

Accordingly, for each of the foregoing reasons, Plaintiff's claim must fail.

**VII. <u>Conclusion</u>**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED**.

**DONE** this **21st** day of **March, 2019.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
